IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ADOLPHUS GOSSETT, Y17397**  )
                              )
         **Plaintiff,**       )
                              )
vs.                           )
                              )  Case No. 20-cv-943-RJD
**ROXANNE MCDONALD, ANDY**    )
**STOUT, AND MICHAEL DEAN,**  )
                              )
         **Defendants.**      )
                              )

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on multiple motions filed by the parties, including Defendants' Motion for Summary Judgment. Doc. 56. Plaintiff responded. Doc. 61. As explained further, Defendants' motion is DENIED. Plaintiff's Motion for Copies (Doc. 59) is GRANTED and his Motion for Recruitment of Counsel (Doc. 60) is DENIED WITHOUT PREJUDICE.

Background

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC), filed this lawsuit pro se and in forma pauperis. Doc. 12. He alleges that on December 12, 2018, he became involved in an altercation with correctional officers at Lawrence Correctional Center ("Lawrence"). Doc. 1, p. 6. Officer Rue (not a defendant) and Officer Dean "became physical" with Plaintiff when he tried to get the attention of a lieutenant. *Id*. Defendant Dean "threw closed fist punches" at Plaintiff, tackled him to the ground, and tried to choke him. *Id*. Plaintiff bit Defendant Dean and was then taken to segregation. *Id*. Once in a cell in segregation, Defendants Stout and McDonald (both correctional officers) appeared and asked Plaintiff if he "needed health care." *Id*. Plaintiff responded affirmatively, and Defendant Stout placed

handcuffs on him. *Id*. Defendant Stout then punched Plaintiff in the face and the officers drug Plaintiff to a wheelchair and took him to a "small room to draw blood." *Id*. In the room, Defendant McDonald pushed a nurse away and stuck a needle in Plaintiff's arm "so hard that [his] left palm and thumb went numb." *Id*. Following this Court's threshold review pursuant to 28 U.S.C. §1915A, Plaintiff proceeds on the following claims:

> Count 1:  Eighth Amendment claim against Dean, McDonald, and Stout for excessive force against Plaintiff on December 12, 2018;
>
> Count 2:  Eighth Amendment claim against McDonald and Stout for providing inadequate medical care.

Doc. 12. Defendants waived service and consented to the undersigned's jurisdiction. Docs. 17, 21, 22 and 23. However, counsel never appeared on behalf of Defendant Dean, nor did he otherwise file an answer or appear on his own behalf. Doc. 35. The Clerk made an Entry of Default against Defendant Dean on May 24, 2022. Doc. 36.

### Plaintiff's deposition testimony

Plaintiff recalls that on December 12, 2018, he and other inmates were "let out for a dayroom, like any other typical morning." Doc. 56-1, p. 10. The dayroom is where the inmates can use telephones, take a shower, play cards, or watch television. *Id*., p. 21. Plaintiff needed to return to his cell to use the restroom and was waiting for correctional officers to allow him to do so. *Id*., p. 10. The officers were ignoring him. *Id*., p. 21. Officer Rue (not a defendant) made disrespectful statements to Plaintiff. *Id*., pp. 10, 27. Officer Dean pushed Plaintiff in the chest twice, and Officer Rue told Plaintiff to "cuff up." *Id*., p. 11. Plaintiff asked "what's going on…why [are] you telling me to cuff up?" *Id*.

Officer Dean "slid up behind" [Plaintiff] and placed him in a headlock. *Id*. Plaintiff "tried to defend himself" and wrestled Officer Dean. *Id*., p. 12. Other inmates were watching the incident and yelled "no, no" to Plaintiff. *Id*. Plaintiff released Officer Dean. *Id*. Officer Rue told Plaintiff to get on his knees, which he did, and then Officer Hewitt shackled his left wrist.

*Id*.  Officer Dean grabbed a "handful" of Plaintiff's hair and pulled.  *Id*.  Plaintiff was "hollering," and Officer Dean tried to "put his left arm around [Plaintiff's] neck…but ended up sticking his hand in [Plaintiff's] mouth" as Plaintiff was hollering.  *Id*.  Plaintiff "bit down real fast" and "broke out of their embrace." *Id*., p. 13.   Additional correctional officers wrestled Plaintiff to the ground, and Officer Dean "got some sucker punches in."  *Id*.

Correctional officers took Plaintiff to segregation.  *Id*., p. 14.  He was chained and shackled in such a way that he could only lie "flat on the ground."  *Id*.  A nurse came to segregation and asked him if he was injured; he said "yeah" and she said "well, it's mild" and did not provide any medical care to him.  *Id*., p. 15.  He was then moved to a cell in segregation and the restraints were removed.  *Id*.  He used toilet paper to try to clean the blood on his face.  *Id*.

Later that night, Officers Stout and McDonald and another unidentified officer came to Plaintiff's cell and asked if he wanted medical care.  *Id*., pp. 15, 41.   He responded affirmatively.  *Id*.  They told him to lie flat on the ground; he complied, and they entered the cell.  *Id*., p. 16.  As they were placing shackles on his ankles, Plaintiff felt a "hit towards…the right side of my face…real hard" and he screamed out in pain.  *Id*.  Plaintiff turned to see which officer hit him and saw Officer Stout.  *Id*.  Officer Stout hit him in the face again, and the three officers strapped him in a wheelchair.  *Id*.  They transported him to a room in the healthcare unit.  *Id*.  A nurse approached Plaintiff.  *Id*., p. 17.  She appeared "real hesitant, like she didn't want to do it."  *Id*.  Officer Stout "grabbed [Plaintiff's] head" and started hitting him in the face.  *Id*.  Officer McDonald "snatch[ed] the needle out of [the nurse's] hand and… shove[d]… that little nurse out of the way."  Officer McDonald then "stuck that needle in [Plaintiff's] arm and injected [him]" with an unknown substance.  *Id*., pp. 17, 39.

The officers then "rolled" Plaintiff into the Internal Affairs Office.  *Id*., p. 18.  Officer McDonald told the Internal Affairs investigator that Plaintiff was "acting crazy or wild" during the escort to Internal Affairs.  *Id*.  Officers McDonald and Stout then left the Internal Affairs office.

*Id*.    After his interview, Plaintiff was transported to Pontiac Correctional Center, where he remained for the next four years and approximately three months.  *Id*., pp. 8-9.

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

To support their Motion, Defendants rely upon medical records and incident reports that present a version of the December 12, 2018 event that conflicts with Plaintiff's deposition testimony.   Citing IDOC's Report of Investigation, Defendants contend that Plaintiff engaged in a staff assault, punching the officers and biting the tip of Defendant Dean's thumb off.  Defendants then cite Plaintiff's medical records and argue that he was treated by a nurse for his injuries and his blood was drawn.  Citing incident reports completed by Defendants Dean and Stout, Defendants claim that a "struggle ensued" as they escorted Plaintiff to Internal Affairs, but that Plaintiff was not injured during this "struggle" and they simply placed restraints on him, as

well as a spit shield.

Clearly, there are genuine issues of material fact that preclude summary judgment in Defendants' favor. Defendants argue that the undersigned should disregard Plaintiff's deposition testimony because it is self-serving and portions of it conflict with the allegations in his Complaint (e.g., that he was injected with "something" instead of having his blood drawn). This argument reflects a fundamental misunderstanding of well-settled standards for summary judgment. The Court does not disregard Plaintiff's deposition testimony simply because it is "self-serving." *See Anderson*, 477 U.S. at 249. The Court does not "weigh evidence and decide the truth of the matter." *Id*. Where each party gives admissible, conflicting testimony (either through affidavit or deposition), the undersigned does not determine which party is more credible. *See id*. The Court's role is simply to determine whether the admissible evidence in the record creates a genuine issue for trial. *Id*.

Defendants urge the Court to "note[] that district courts within the Seventh Circuit have ruled no question of fact exists when Plaintiff's own self-serving testimony is blatantly contradicted by the record." Doc. 56, p. 6. Defendants support this argument by citing a district court case that mentions *Scott v. Harris*, 550 U.S. 372, 380 (2007) in a footnote. *Rowe v. DeRosa*, 2018 WL 502658, *11 (E. D. Wis. Jan. 22, 2018). In *Scott*, the United States Supreme Court found that video footage "so utterly discredited" one party's version of events that summary judgment was warranted in favor of the other party. *Scott*, 550 U.S. at 381 (the Appeals Court "should have viewed the facts in the light depicted by the videotape").

In this case, the record contains no video evidence. There is only testimony by Plaintiff, incident reports completed by Defendants, medical records, and an investigation report completed by Defendants' employer. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants Stout and McDonald used excessive force against Plaintiff. In an Eighth Amendment excessive force claim, the Court considers whether "force

was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019) (quoting *Whitley v. Albers*, 475 U.S., 312, 320-21 (1986).   According to Plaintiff, Defendant Stout punched him twice as he lied flat on the ground and even though he was complying with Defendants' orders.   Defendant Stout also punched him in the healthcare unit.   Also according to Plaintiff, Defendant McDonald (who is not a healthcare provider) plunged a needle into his arm after shoving a nurse out of the way who was attempting to either draw Plaintiff's blood or give him an injection.   A reasonable inference from this testimony is that Defendants McDonald and Stout were acting maliciously towards Plaintiff and not in a good faith effort to restore discipline.

Similarly, a jury could also find that Defendants Stout and Dean denied Plaintiff medical care.   An Eighth Amendment claim for deliberate indifference against a non-medical prison official proceeds to trial if evidence reflects that the prison official "intentionally den[ied] or delay[ed] access to medical care."  *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   According to Plaintiff, he received no medical treatment after he was "sucker punch[ed]" by Defendant Dean and had to clean blood from his face with toilet paper.   Defendants Stout and McDonald asked him if he wanted medical care and he told them that he did.   Instead of allowing the nurse to attend to him, or otherwise referring Plaintiff to healthcare for treatment, Defendant McDonald plunged a needle into his arm and he received no treatment.

Defendants cite to medical records that state Plaintiff was evaluated by a nurse at 2:40 p.m. and then taken to healthcare for blood tests at 3:00 p.m., as well as their own time sheet records (reflecting that they worked the 3-11pm shift), and contend that therefore "they could not have been deliberately indifferent to Plaintiff's medical needs as by the time they encountered Plaintiff at around 6:00 p.m. on December 12, 2018, Plaintiff had already been evaluated by a nurse and injuries that were sustained were documented and treated."   Those medical records-particularly

unaccompanied by any affidavit or testimony evidence-merely create a genuine issue of material fact. Plaintiff testified that the records are fabricated. He explained that it would have been impossible for anyone to transport him to healthcare for his blood to be drawn at 3:00 p.m. because the shift change occurs at 3pm; all inmates would be "locked up" for the count. Doc. 56-1, p. 41. Moreover, he testified that when Officers McDonald and Stout transported him out of segregation and to the room where he was stuck with a needle, it was dark outside. *Id*., p. 40. Finally, Plaintiff testified that the incident that occurred with Officer McDonald plunging a needle in his arm did not involve his blood being drawn, explaining "you know when they draw blood, they had a tube where you can watch your blood going into the thing that they're putting your blood into. No. This was just a needle by itself." *Id*. , p. 39.

Overall, the evidence and reasonable inferences from that evidence reflect that a reasonable jury could find Defendants violated Plaintiff's Eighth Amendment rights, either through excessive force, deliberate indifference, or both. For the same reasons that Defendants contend they are entitled to summary judgment, they also argue that the Court should grant qualified immunity in their favor. As explained above, there is a genuine issue of material fact regarding whether Defendants violated Plaintiff's Eighth Amendment rights, and this case will proceed to trial.

Defendants also argue that the Court should find that Defendants are entitled to "summary judgment on Plaintiff's request for punitive damages." The jury may determine whether punitive damages should be awarded (and how much) in a §1983 case if the evidence reflects "a reckless or callous indifference to [Plaintiff's] federally protected rights." *Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019). Considering Plaintiff's testimony that Defendant Stout hit him as he was lying on the floor and/or fully restrained, and Defendant McDonald plunged a needle into his arm, the Court cannot find-at this stage in the case-that punitive damages are foreclosed. At the close of evidence, the Court will determine whether the question of punitive damages should be submitted to the jury. *See id.*

**Plaintiff's Motion for Copies (Doc. 59)**

Plaintiff requests that the Court send him copies of Defendants' answers and affirmative defenses because officers at his current institution destroyed his papers.   The Clerk of Court is directed to send Plaintiff a copy of Defendants' answers and affirmative defenses found at Doc. 29.

**Plaintiff's Motion for Recruitment of Counsel (Doc. 60)**

When presented with a request to recruit counsel for an indigent litigant, the Court considers whether he made a reasonable attempt to find an attorney or has been precluded from doing so, and whether, considering the difficulty of the case, he appears competent to litigate the case himself.  *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).   For the first time, Plaintiff asks the Court to recruit an attorney for him.  Doc. 60.  However, his Motion does not include any details regarding whether he attempted to find an attorney himself.  Accordingly, Plaintiff's Motion is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

**DATED: September 24, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**